# EXHIBIT "A"

# PRIVATE ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (this "**AGREEMENT**") is made and entered into as of this day, August 23, 2023 by and among **The Law firm of Gregory Kuczinski, Esq., P.C.** (the "**COMPANY**"), and **The Kurland Law Group** as escrow agent, a registered Law Firm organized and existing under the laws of the State of New York. (the "**ESCROW AGENT**").

## RECITALS

**WHEREAS,** the Company has the need for a private escrow account, and

**WHEREAS** the Company desires to retain The Kurland Law Group to act as Escrow Agent, and

**WHEREAS,** Sari Kurland, Esq. desires to act as Escrow Agent and fiduciary for the Company's escrow needs,

## AGREEMENT

**NOW, THEREFORE,** the Company, and Escrow Agent agree to the terms of this Agreement as follows:

1. **Establishment of Escrow Account and Digital Wallet; Escrow Period.** The Company hereby appoints the Escrow Agent as escrow agent for purposes of holding the Company Assets (Funds) on the terms and conditions set forth herein. On or prior to the commencement of the private escrow account, the Company shall fund the escrow account with the Escrow Agent, which shall be entitled "Escrow Account for the Benefit of The Kurland Law Group Attorney Escrow Account (IOLTA) or such similar designation as the Company and the Escrow Agent may agree (the "Escrow Account.") This Agreement shall be effective as of the date of the final signing of this Agreement, and the funding of the Escrow Account.  The Escrow Agent agrees to accept and hold US Dollars in his IOLTA account and concomitantly, the Ether Cryptocurrency, Bitcoin Currency and/or USDT Currency (ASSETS) into a private Cold Storage Cryptocurrency wallet under the exclusive control of the Escrow Agent. The assets and funds will be held for the purpose of transacting on behalf of the Company, subject to a supplemental invoice for each transaction and approved by the Company and the Company's purchase agreement.

2.  **Termination of Escrow Account. The "TERMINATION DATE"** of this Agreement shall be the earlier of: (i) 30 days from the date that the Company requests the funds to be returned to the Company; or (ii) 30 days from the date that the Escrow Agent requests the funds to be returned to the Company. After the Termination Date, the Company and its agents shall not deposit, and the Escrow Agent shall not accept, any additional amounts representing payments by prospective investors in the Company. For purposes of this Agreement, the "Escrow Period" shall mean the period commencing on the date on which both this Agreement has been executed and funds are transferred into the Escrow Account and ending on the Termination Date.

3.  **Operation of the Escrow.**

    (a) **Deposits in the Escrow Account.** During the Escrow Period, persons subscribing to Transact with Company, will be instructed by the Company to make payments to the account of The Kurland Law Group or private firm digital wallet (hereinafter referred to as "KLG"), as Escrow Agent for the Company, or any recognizable abbreviation thereof. Completed agreements and payments shall be remitted to the Attorney Trust Account of KLG or firm digital wallet as specified in the agreement with the Company, as provided by The Kurland Law Group.

    Company Funds shall be held in the Escrow Account until this Agreement has terminated pursuant to the terms herein or the same is used to fund the completed transaction as contemplated by the Company.

    (b) **Disbursement of Company Funds.** Any disbursement of Company assets shall be directed by the Company in writing, delivered electronically to Escrow Agent not less than 24 hours prior to the requested date of release, including the return of any funds to the Company as directed by the Company. Refer to Exhibit A.

4.  **Company Funds in the Escrow Account.** Upon receipt of Company Assets, the Escrow Agent shall hold such Company Funds in escrow pursuant to the terms of this Agreement. The Escrow Agent shall not release any funds deposited without the prior written direction or approval from the Company. There shall be no interest generated form this escrow as the same is controlled and regulated by the State. The Escrow Agent shall provide to the Company monthly statements (or more frequently as reasonably requested by the Company which includes, without limitation) on the account balance in the Escrow Account and the activity in such accounts since the last report.

5.  **Duties of the Escrow Agent.** The Escrow Agent shall have no duties or responsibilities other than those expressly set forth in this Agreement, and no implied duties or obligations shall be read into this Agreement against the Escrow Agent. The Escrow Agent is not a party to, or bound by, any other agreement among the other parties hereto with respect to the subject matter hereof, and the Escrow Agent's duties shall be determined solely by reference to this Agreement. The Escrow Agent shall have no duty to enforce any obligation of any person, other than as provided herein. The Escrow Agent shall be under no liability to anyone by reason of any failure on the part of any party hereto or any maker, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.

6.  **Liability of the Escrow Agent: Indemnification.** The Escrow Agent acts hereunder as a depository only. The Escrow Agent shall not be liable, except for willful misconduct, breach of trust, or gross negligence, for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith, and in the exercise of its own best judgment, and may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by the Escrow Agent), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is believed by the Escrow Agent to be genuine and to be signed or presented by the proper person(s). The Escrow Agent shall not be held liable for any error in judgment made in good faith by an officer or employee of either unless it shall be proved that such officer or employee was grossly negligent or reckless in ascertaining the pertinent facts or acted intentionally in bad faith or engaged in willful misconduct or a breach of trust. The Escrow Agent shall not be bound by any notice of demand, or any waiver, modification, termination or rescission of this Agreement or any of the terms hereof, unless evidenced by a writing delivered to the Escrow Agent signed by the proper party or parties and, if the duties or rights of the Escrow Agent are affected, unless it shall give its prior written consent thereto.

    The Escrow Agent may consult legal counsel and shall exercise reasonable care in the selection of such counsel, in the event of any dispute or question as to the construction of any provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in accordance with the reasonable opinion or instructions of such counsel.

    The Escrow Agent shall not be responsible, may conclusively rely upon

Page 3 of 11

and shall be protected, indemnified and held harmless by the Company, for the sufficiency or accuracy of the form of, or the execution, validity, value or genuineness of any document or property received, held or delivered by it hereunder, or of the signature or endorsement thereon, or for any description therein; nor shall the Escrow Agent be responsible or liable in any respect on account of the identity, authority or rights of the persons executing or delivering or purporting to execute or deliver any document, property or this Agreement.

If the Escrow Agent shall become involved in any arbitration or litigation relating to the Company Funds in the Escrow Account, each is authorized to comply with any decision reached through such arbitration or litigation.

The Company hereby agrees to indemnify the Escrow Agent for, and to hold each harmless against any loss, liability or expense incurred in connection herewith, except losses, damages or expenses due to gross negligence, breach of trust, recklessness, bad faith or willful misconduct on the part of the Escrow Agent, including without limitation, legal or other fees arising out of or in connection with its entering into this Agreement and carrying out its duties hereunder, including without limitation the costs and expenses of defending itself against any claim of liability in the premises or any action for interpleader. The Escrow Agent shall be under no obligation to institute or defend any action, suit, or legal proceeding in connection herewith, unless first indemnified and held harmless to its satisfaction in accordance with the foregoing, except that neither shall be indemnified against any loss, liability or expense arising out of its own gross negligence, recklessness, bad faith or willful misconduct. The terms of this Section shall survive the termination of the Escrow Agreement and the resignation or removal of the Escrow Agent.

7. **The Escrow Agent's Fee.** Escrow Agent shall be entitled to fees and expenses for its regular services as Escrow Agent as set forth in Exhibit A. Additionally, Escrow Agent is entitled to reasonable fees for extraordinary services and reimbursement of any reasonable out of pocket and extraordinary costs and expenses related to its obligations as Escrow Agent under this Agreement, including, but not limited to, reasonable attorneys' fees. All of the Escrow Agent's compensation, costs and expenses shall be paid by the Company in accordance with Exhibit A hereto.

8. **Security Interests.** No party to this Escrow Agreement shall grant a security interest in any monies or other property deposited with the Escrow Agent under this Escrow Agreement, or otherwise create a lien,

encumbrance or other claim against such monies or borrow against the same.

9. **Dispute.** In the event of any disagreement between the undersigned or the person or persons named in the instructions contained in this Agreement, or any other person, resulting in adverse claims and demands being made in connection with or for any papers, money or property involved herein, or affected hereby, the Escrow Agent shall be entitled to refuse to comply with any demand or claim, as long as such disagreement shall continue, and in so refusing to make any delivery or other disposition of any money, papers or property involved or affected hereby, the Escrow Agent shall not be or become liable to the undersigned or to any person named in such instructions for its refusal to comply with such conflicting or adverse demands, and the Escrow Agent shall be entitled to refuse and refrain to act until: (a) the rights of the adverse claimants shall have been fully and finally adjudicated in a Court assuming and having jurisdiction of the parties and money, papers and property involved herein or affected hereby, or (b) all differences shall have been adjusted by agreement and the Escrow Agent shall have been notified thereof in writing, signed by all the interested parties.

10. **Resignation of Escrow Agent.** Escrow Agent may resign or be removed, at any time, for any reason, by written notice of its resignation or removal to the proper parties at their respective addresses as set forth herein, at least 30 days before the date specified for such resignation or removal to take effect.

    Upon the effective date of such resignation or removal:

    (a) All cash and other payments and all other property then held by the Escrow Agent hereunder shall be delivered by it to such successor escrow agent as may be designated in writing by the Company, whereupon the Escrow Agent's obligations hereunder shall cease and terminate.

    (b) If no such successor escrow agent has been designated by such date, all obligations of the Escrow Agent hereunder shall, nevertheless, cease and terminate, and the Escrow Agent's sole responsibility thereafter shall be to keep all property then held by it and to deliver the same to a person designated in writing by the Company or in accordance with the directions of a final order or judgment of a court of competent jurisdiction.

    (c) Further, if no such successor escrow agent has been designated by such date, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor agent; further the

      Escrow Agent may pay into court all monies and property deposited with Escrow Agent under this Agreement.

      The terms of this Section shall survive the termination of the Escrow Agreement and the resignation or removal of the Escrow Agent.

11. **Undertakings of Escrow Agent.** The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Agreement. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. The Escrow Agent shall have no duty to solicit any payments which may be due it or the Escrow Fund. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to the Issuer or Depositor. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys (and shall be liable only for the careful selection of any such agent or attorney) and may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing by all of the other parties hereto or by a final order or judgment of a court of competent jurisdiction. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

12. **Notices.** All notices, demands and requests required or permitted to be given under the provisions hereof must be in writing and shall be deemed to have been sufficiently given, upon receipt, if delivered to the email address listed below, or to such other email address as a

party shall have designated by notice in writing to the other parties in the manner provided by this Section:

**If to the Company: Gregory Kuczinski, Esq. P.C.**
Email: gkuczinski@kuczinskilaw.com
Telephone: (914) 245-7200
Attention: Gregory Kuczinski, Esq

**If to the Escrow Agent: The Kurland Law Group**
Email: sari@sarikurland.com
Telephone: (301) 424-2834
Attention: Sari K. Kurland, Esq.

13. **Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of New York without regard to the principles of conflicts of law.

14. **Binding Effect; Benefit.** This Agreement shall be binding upon and inure to the benefit of the permitted successors and assigns of the parties hereto.

15. **Modification.** This Agreement may be amended, modified or terminated at any time by a writing executed by the Company and the Escrow Agent.

16. **Assignability.** This Agreement shall not be assigned by the Escrow Agent without the Company's prior written consent.

17. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Copies, telecopies, facsimiles, electronic files and other reproductions of original executed documents shall be deemed to be authentic and valid counterparts of such original documents for all purposes, including the filing of any claim, action or suit in the appropriate court of law.

18. **Headings.** The section headings contained in this Agreement are inserted for convenience only, and shall not affect in any way, the meaning or interpretation of this Agreement.

19. **Severability.** This Agreement constitutes the entire agreement among the parties and supersedes all prior and contemporaneous agreements

and undertakings of the parties in connection herewith. No failure or delay of the Escrow Agent in exercising any right, power or remedy may be, or may be deemed to be, a waiver thereof; nor may any single or partial exercise of any right, power or remedy preclude any other or further exercise of any right, power or remedy. In the event that any one or more of the provisions contained in this Agreement, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement.

20. **Earnings Allocation; Tax Matters; Patriot Act Compliance; Office of Foreign Control Search Duties.** If the Escrow Agent remits Escrow Income pursuant to this Agreement, the Escrow Agent shall be responsible for any necessary federal tax reporting associated with such income, provided that the Escrow Agent shall not be responsible for any other tax reporting under this Escrow Agreement. The Company shall provide to Escrow Agent upon the execution of this Agreement any documentation requested, and any information reasonably requested by the Escrow Agent to comply with State or Federal Law.

21. **Miscellaneous.** This Agreement shall not be construed against the party preparing it, and shall be construed without regard to the identity of the person who drafted it or the party who caused it to be drafted and shall be construed as if all parties had jointly prepared this Agreement and it shall be deemed their joint work product, and each and every provision of this Agreement shall be construed as though all of the parties hereto participated equally in the drafting hereof; and any uncertainty or ambiguity shall not be interpreted against any one party. As a result of the foregoing, any rule of construction that a document is to be construed against the drafting party shall not be applicable.

Company recognizes the Escrow Agent's responsibility to perform due diligence and compliance with respect to KYC and AML regulations and as such, the Company agrees to provide to the Escrow Agent, a complete CIS statement, a copy of which is attached hereto as Exhibit B, prior to transferring any funds into the escrow account.

- **SIGNATURE PAGE FOLLOWS** -

WHEREAS, The Kurland Law Group desires to act as Escrow Agent and fiduciary for the Company's escrow needs

COMPANY: GREGORY KUCZINSKI, ESQ., P.C.

By: *[signature]*
Name: Gregory Kuczinski, Esq.,
Title: President

ESCROW AGENT: THE KURLAND LAW GROUP

By: *[signature: Sari Kurland]*
Name: Sari K. Kurland, Esq.
Title: President

## EXHIBIT A
ESCROW FEES AND EXPENSES

Each lawyer's fees shall be directly paid by the client who has engaged their services for this transaction. Greg Kuczinski's compensation will be provided by A1 MINING, while Sari Kurland's remuneration will be covered by EQUILAND.

In the event of non-performance, the entire funds and assets must be returned within 24 hours of the receipt of the funds.

**EXHIBIT C**
BANKING COORDINATES

The Attorney Escrow Accounts (IOLTA) are as follows:

| | |
|---|---|
| **BANK NAME** | JP MORGAN CHASE, NA |
| **BANK ADDRESS** | 12097 Rockville Pike, Rockville, MD 20852 |
| **ACCOUNT NAME** | THE LAW OFFICES OF SARI K. KURLAND, PC |
| **ACCOUNT NUMBER** | 711990785 |
| **BENEFICIARY ADDRESS** | 211 Jersey Lane, Rockville, MD 208580 |
| **SWIFT CODE** | CHASUS33 |
| **PURPOSE** | ESCROW DEPOSIT |

| | |
|---|---|
| **BANK NAME** | WELLS FARGO BANK, NA |
| **BANK ADDRESS** | 107 Crown Park Ave., Gaithersburg, MD 20878 |
| **ACCOUNT NAME** | THE LAW OFFICES OF SARI K. KURLAND, PC |
| **ACCOUNT NUMBER** | 7769767703 |
| **BENEFICIARY ADDRESS** | 211 Jersey Lane, Rockville, MD 208580 |
| **SWIFT CODE** | WFBIUS6SXXX |
| **ABA ROUTING NUMBER** | 121000248 |
| **PURPOSE** | ESCROW DEPOSIT |